**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RANSOM YOUNG,

    Plaintiff,

       v.

BRIAN KISENWETHER, Individually and
as Butler Township Supervisor;
CHARLES ALTMILLER, Individually and
as Butler Township Supervisor; and
BUTLER TOWNSHIP

    Defendants.

CIVIL ACTION NO. 3:12-0379

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is the Motion to Dismiss Plaintiff Ransom Young's ("Young") First Amended Complaint filed by Defendants Brian Kisenwether ("Kisenwether"), Charles Altmiller ("Altmiller"), and Butler Township (collectively "Defendants"). (Doc. 12.) Young brings this action against the majority Butler Township Supervisors, Kisenwether and Altmiller, as well as against Butler Township, asserting that he was terminated from his position as Butler Township road foreman/laborer in violation of his constitutional rights. Defendants seek dismissal of the claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because Young did not have a property interest in his employment with Butler Township and Defendants' conduct was not stigmatizing, his due process claims will be dismissed. However, because Plaintiff adequately alleged that he was retaliated and discriminated against after engaging in protected conduct, Defendants' motion to dismiss Young's First Amendment claims will be denied.

### I. Background

The facts as alleged in the Amended Complaint are as follows:

Butler Township is a municipal government known as a Second Class Township in

the state of Pennsylvania. (*Am. Compl.*, ¶ 7.)  Butler Township is governed by an elected board of three supervisors. (*Id*. at ¶ 8.)   The Butler Township Supervisors are Young, Kisenwether, and Altmiller. (*Id*. at ¶¶ 4-6.)

For approximately twenty-two (22) years, Young was employed by Butler Township as a full-time road foreman/laborer which is a position separate and distinct from that of the elected Supervisor position and appointed Road Master position. (*Id*. at ¶ 10.)  On January 3, 2012, when Young was discharged from his full-time foreman/laborer position, Altmiller was the appointed Road Master. (*Id*. at ¶ 11.)  In his position as foreman/laborer, Young's job duties did not include any policy making decisions, nor did it require political party affiliation. (*Id*. at ¶ 13.)

In his capacity as foreman/laborer, Young's employment was governed by a bargained-for contract. (*Id*. at ¶ 16.)   Butler Township's authority to enter into an employment agreement with Young was pursuant to the Public Employe Relations Act, 43 P.S. §§ 1101.101, *et seq*. (*Id*. at ¶ 15.)  At the time of his discharge, Young's Employment Agreement was to be "effective through January 1, 2012 and may at the desire of the Employer and Employee be extended at two-year intervals." (*Id*. at ¶ 18, Ex. B.)   The Employment Agreement provided that Young could "be terminated at any time for just cause upon two-thirds vote of the Township Supervisors." (*Id*. at ¶ 21, Ex. B.)  And, because Butler Township adhered to the terms of the Employment Agreement through January 3, 2012 by compensating him for holidays and sick-days, Butler Township desired to extend the Agreement for an additional two-year period. (*Id*.)  Alternatively, as Young's employment benefits mirrored those of Butler Township's unionized employees, he could not be suspended without just cause. (*Id*. at ¶ 22.)

At all times relevant hereto, Young was a registered member of the Democratic party, a fact known by Kisenwether and Altmiller. (*Id*. at ¶ 25.)  Kisenwether and Altmiller are both

registered members of the Republican party. (*Id*.)

Young successfully obtained his seat on the Board of Supervisors in 1995 when he defeated Kisenwether. (*Id*. at ¶ 26.)  In 2009, Kisenwether was re-elected to the Board of Supervisors and he took office in January 2010. (*Id*. at ¶ 27.)  During Kisenwether's campaign, Young openly and actively supported and campaigned for opposing candidates by making financial contributions to these candidates, by displaying a political sign on his personal property, and by asking others to support and vote for Kisenwether's opponent. (*Id*. at ¶ 28.)

In 2011, Altmiller won a Supervisor seat and assumed office on January 3, 2012. (*Id*. at ¶ 29.)  Young openly and actively campaigned against Altmiller by making contributions to his opponent, by displaying a political sign on his property, and by asking others to support and vote for Altmiller's opponents. (*Id*. at ¶ 30.)

As a result of Altmiller's victory, the power of political majority on the Butler Township Board of Supervisors shifted to the Republican party when Altmiller assumed his position on January 3, 2012. (*Id*. at ¶ 31.)  At the first meeting of the newly comprised Board of Supervisors, Kisenwether and Altmiller voted to fire Young from his position as foreman/laborer. (*Id*. at ¶ 32.)  The firing of Young occurred without any prior notice or opportunity to be heard. (*Id*. at ¶ 34.)  And, this firing occurred at a public meeting with members of the public in attendance and was reported in newspapers and on television. (*Id*. at ¶ 35.)  Due to his termination, Defendants created a false impression that Young's performance as an employee was poor or subpar, which has subjected him to ridicule and embarrassment. (*Id*. at ¶ 36.)  Thereafter, Young's position was filled by then current senior equipment operator Robert Kupsho, a registered Republican, and a new employee, Daniel Brighthaupt, also a Republican, was hired as an equipment operator. (*Id*. at ¶ 41.)

Based on the foregoing events, Young commenced this action pursuant to 42 U.S.C.

§ 1983 asserting the following claims: (1) First Amendment free speech retaliation and discrimination based on political patronage; (2) Fourteenth Amendment deprivation of property interest; and (3) Fourteenth Amendment deprivation of liberty interest in reputation. (*Am. Compl.*)  On May 9, 2012, Defendants filed a motion to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Now, as Defendants' motion to dismiss has been fully briefed, it is ripe for disposition.

## II. Discussion

### A.    Legal Standards

#### 1.    12(b)(6) Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail. *See id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the ... claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*,

578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1949**.**

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*.  The Court need not assume the plaintiff can prove facts that were

5

not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### 2.    Section 1983

Plaintiff's claims against Defendants are asserted pursuant to 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen ... or any other person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)).  "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, (1) acting under color of law, (2) violated the plaintiff's federal constitutional or statutory rights, (3) and thereby caused the complained of injury." *Elmore v. Cleary*, 299 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

## B.    Defendants' Motion to Dismiss

Defendants seek to dismiss all of Young's claims pursuant to Rule 12(b)(6).  In addition, Defendants request that Young's claim for punitive damages be stricken from the Amended Complaint.

### 1.    First Amendment

In Count I of the First Amended Complaint, Young alleges a First Amendment

retaliation claim and a First Amendment political patronage discrimination claim. Defendants assert that both of these claims fail to state a claim for which relief can be granted.

### a. Retaliation

"To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006) (citing *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)).  A public employee's statement is protected activity when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Id.* at 241-42 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)).

To determine whether conduct is protected speech, a court must conduct a fact-intensive inquiry into the nature and factual context of the conduct, as well as the environment in which it was undertaken. *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 158 (3d Cir. 2002) (citations omitted).  If the "activity was sufficiently imbued with the elements of communication to fall within the First Amendment's scope," it is protected. *Id*. (quoting *Spence v. Washington*, 418 U.S. 405, 409–10, 94 S. Ct. 2727, 41 L .Ed. 2d 842 (1974)).  An action is "sufficiently imbued with elements of communication" if the plaintiff "intended subjectively . . . for his conduct to communicate to persons whom he expected to observe it . . . [and] observers understood the message the [plaintiff] intended his conduct to convey." *Id*. at 161 (citation omitted).

Defendants argue that Young has failed to adequately plead a retaliation claim

because he did not aver "when Plaintiff engaged in the protected activities, the specific content of the speech, or even the identity of candidates supported from this speech." (*Defs.' Br. Supp. Mot. Dismiss*, 9.)  Furthermore, Defendants assert that the allegations in the First Amended Complaint do not connect Young's termination to protected activity. (*Id*. at 10.)

Defendants' arguments are without merit.  In Young's First Amended Complaint, he alleges he engaged in protected activity during the election cycles in 2009 and 2011 in which he openly campaigned against Kisenwether and Altmiller.  This satisfies the protected conduct requirement to state a First Amendment retaliation claim because a "candidate, no less than any other person, has a First Amendment right to engage in the discussion of public issues and vigorously and tirelessly to advocate his own election and the election of other candidates." *Brown v. Hartlage*, 456 U.S. 45, 53, 102 S. Ct. 1523, 71 L. Ed. 2d 732 (1982).  And, as a result of campaigning and speaking against Kisenwether and Altmiller, he was fired from his position as foreman/laborer at Altmiller's first meeting as a Butler Township Supervisor. (*Am. Compl.*, ¶¶ 46-47.)  Furthermore, Young has adequately asserted that his protected speech occurred "as a private citizen and not as a public official pursuant to his public responsibilities." (*Id*. at ¶¶ 28, 30.)  And, as Young has alleged that he spoke about matters related to the Butler Township Board of Supervisors elections by placing signs in his yard, requesting voters to vote against Kisenwether and Altmiller, and making contributions to opposing candidates, Plaintiff has adequately stated a First Amendment retaliation claim.

### b.    Political Patronage Discrimination

Defendants seek dismissal of Plaintiff's First Amendment political patronage discrimination claim.  Defendants argue that Young fails to allege that he was employed at a public agency in a position that does not require political affiliation.  To state a claim for

political patronage discrimination, Young must allege: "(1) he was employed at a public agency in a position that does not require political affiliation, (2) he was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). Employment decisions predicated on political affiliation are permitted when "policymaking" positions are at issue. *See id*. Factors considered in determining whether a position is policymaking include "whether the employee has duties that are non-discretionary or non-technical, participates in discussions or other meetings, prepares budgets, possesses the authority to hire and fire other employees, has a high salary, retains power over others, and can speak in the name of policymakers." *Id*. The "'key factor seems to be not whether the employee was a supervisor or had a great deal of responsibility[,] but whether [he] has meaningful input into decisionmaking concerning the nature and scope of a major [ ] program.'" *Id*. (quoting *Armour v. Cnty. of Beaver*, 271 F.3d 417, 429 (3d Cir. 2007)).

Defendants argue that under 53 P.S. § 65602(c), which allows Township Supervisors to appoint one of their own as a laborer or road master, the position "becomes a political position through the dual-role because Plaintiff's political power as a Township Supervisor controls his secondary employment as a foreman/laborer." (*Defs.' Br. Supp. Mot. Dismiss*, 12.) Defendants' motion to dismiss the political patronage discrimination claim will be denied because it requests the Court to disregard the facts as alleged in the Amended Complaint. In particular, Young alleges that the foreman/laborer position did not require political affiliation as the job was a "non-advisory, non-policymaking position" separate and distinct from the Supervisor position. (*Am. Compl.*, ¶¶ 9-10.) And, as noted above, Young engaged in protected speech, and his conduct in opposing Defendants Kisenwether and Altmiller, as well as his political affiliation, were the motivating factors in his termination. (*Id*.

at ¶ 49.) Based on these allegations, Plaintiff may proceed on his political patronage discrimination claim.

### 2. Fourteenth Amendment Due Process

The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Here, Young asserts claims for a deprivation of a property interest and a deprivation of a liberty interest. Defendants seek dismissal of both claims.

### a. Deprivation of Property Interest

Courts apply a two-step test to determine whether a party's due process rights were violated by a deprivation of property, examining: "(1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute 'due process of law.' " *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir.2011) (quotations omitted) (quoting *Gikas v. Wash. Sch. Dist.*, 328 F.3d 731, 737 (3d Cir.2003)). "To have a property interest in a job, however, a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)).

In Pennsylvania, "'a public employee takes his job subject to the possibility of summary removal by the employing authority. He is essentially an employee-at-will.'" *Id*. (quoting *Scott v. Phila. Parking Auth.*, 402 Pa. 151, 166 A.2d 278, 280 (1960)). Importantly, "[a] local government in Pennsylvania cannot provide its employees with tenure status unless there exists express legislative authority for doing so." *Id*. at 282. Thus, "'tenure in public employment, in the sense of having a claim to employment which precludes dismissal on a summary basis is, where it exists, a matter of legislative grace.'" *Id*. at 283 (quoting *Stumpp v. Stroudsburg Mun. Auth.*, 540 Pa. 391, 658 A.2d 333, 334 (1995)).

Young asserts that Butler Township had statutory authority to enter into "for cause" employment agreements pursuant to the Pennsylvania Public Employe Relations Act ("PERA"), 43 P.S. § 1101.201.   Defendants' assert, however, that this argument was rejected in *Covert v. Redevelopment Auth of Huntingdon Cnty.*, 447 S. Supp. 270, 274-75 (M.D. Pa. 1978).   In *Covert*, the plaintiff argued that the Pennsylvania Supreme Court's holding in *Scott* that public employees are generally terminable at will was undermined by the enactment of PERA. *Id*. (citing *Scott*, 402 Pa. 151, 166 A.2d 78).   The district court rejected the plaintiff's argument because there was "no indication that the legislation intended to change the previous law of Pennsylvania as it applies to public employees who are not included within collective bargain agreements." *Id*.

Young argues that here, unlike in *Covell*, he has a specific contract with his public employer, Butler Township.   Thus, Plaintiff asserts that the issue in this case is whether the PERA allows individual public employees to negotiate contracts with their public employers. In support of his position, Young relies on the Pennsylvania Supreme Court's decision in *Pa. Office of Admin. v. Pa. Labor Relations Bd.*, 591 Pa. 176, 916 A.2d 541, 547-48 (2007)). In *Office of Admin.*, the Court stated that under the plain language of the PERA, not all rights are vested in the union, but rather, "it is the individual public employee who possesses certain rights, including the right to . . . 'engage in lawful concerted activities for mutual aid and protection.'" *Id*. at 548 (quoting 43 P.S. § 1101.401).   Accordingly, the Court held that "Section 401 of PERA grants individual employees certain rights, including the right to engage in mutual aid and protection, which do not necessarily implicate bargaining rights." *Id*. at 549.

Based on the *Office of Admin.* reasoning, Plaintiff argues that the PERA allows public employers to enter into "for cause" employment contracts.   The Court disagrees.   First, Section 401 does not apply to the facts of this case.   Section 401 permits "public employees

. . . to engage in lawful concerted activities for the purpose of . . . other mutual aid and protection." 43 P.S. § 1101.401.  While the *Office of Admin.* Court held that this language does not necessarily implicate bargaining rights, Section 401 still requires employees to engage in "concerted activities." *Id.*  And, while the Pennsylvania Supreme Court did not define this term, conduct involves "concerted activity" under the National Labor Relations Act "if the employee's actions are made 'on behalf of other employees or at least . . . made with the object of inducing or preparing for group action.'" *Compuware Corp. v. N.L.R.B.*, 134 F.3d 1285, 1288 (6th Cir. 1998) (quoting *Aro, Inc. v. N.L.R.B.*, 596 F.2d 713, 718 (6th Cir. 1979)); *see also Illinois Ruan Transp. Corp. v. N.L.R.B.*, 404 F.2d 274, 289 (8th Cir. 1969) (Lay, J., dissenting) ("'concerted activity' may exist if there is some reasonable relationship connecting an employee's conduct with the 'mutual aid and protection' of other employees").  Here, as Young alleges only that the "for cause" contract impacted his employment without any action on behalf of or for the benefit of others, he has not asserted any "concerted activity" which would be encompassed within Section 401 of the PERA. Therefore, the PERA does not apply to the facts as alleged by Young.

Second, and more importantly, however, *Office of Admin.* does not provide authority for Plaintiff's position that Butler Township, through the PERA, may enter into employment contracts with a foreman/laborer with a "for cause" termination provision.  As noted, "the power to confer tenure must be expressly set forth in the enabling legislation." *Stumpp*, 658 A.2d at 334.  Here, the PERA does not explicitly authorize a municipality to enter into "for cause" employment contracts with road workers.  And, Young has not pled any other "enabling legislation" which demonstrates that Butler Township had the power to enter into a contract of employment that contracted away the right of summary dismissal. *See, e.g., Apollo v. Pa. Convention Ctr. Auth.*, No. 11-6684, 2012 WL 2362408 (E.D. Pa. June 20, 2012) (enabling legislation did not specifically allow the Pennsylvania Convention Center

Authority to enter into "for cause" employment agreement with the plaintiff); *Demko v. Luzerne Cnty. Cmty. Coll.*, 113 F. Supp. 2d 722 (M.D. Pa. 2000) (community college enabling legislation did not authorize the College to alter the employment-at-will status of administrators); *Stumpp*, 658 A.2d at 334 (Stroudsburg Municipal Authority did not have authority to enter agreement with the plaintiff to retain position as plant operator until he retired); *Guerra v. Redevelopment Auth. of City of Phila.*, 27 A.3d 1284 (Pa. Super. 2011) (Philadelphia Redevelopment Authority lacked legislative authority to create a contract that only allowed for the dismissal of the General Counsel "for cause").   As Plaintiff has not identified any enabling legislation which would grant Butler Township the authority to enter into a "for cause" employment agreement with a foreman/laborer, Young has failed to identify a property interest in his employment necessary to establish a due process claim. Accordingly, Count II of the First Amended Complaint will be dismissed.

### b.   Deprivation of Liberty Interest

"In order to state a claim for a § 1983 due process liberty interest violation in the public employment context, a plaintiff must satisfy the 'stigma plus' test." *Brown v. Montgomery Cnty.*, 470 F. App'x 87 (3d Cir. 2012) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006)).   Under the "stigma plus" test:

> The creation and dissemination of a false and defamatory impression is the stigma, and the termination is the plus.  When such a deprivation occurs, the employee is entitled to a name-clearing hearing.  To satisfy the stigma prong of the test, the employee must show: 1) publication of 2) a substantially and materially false statement that 3) infringed upon the reputation, honor, or integrity of the employee.

*Id*. (internal citations omitted).   Furthermore, "a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma plus' test even if, as a matter of state law, he lacks a property interest in the job he lost." *Hill*, 455 F.3d at 238.

Nevertheless, "'no liberty interest of constitutional significance is implicated when the

13

employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance.'" *Fox v. Cheltenham Twp. Auth.*, No. 12-716, 2012 WL 2273424, at *4 (E.D. Pa. June 18, 2012) (quoting *Mercer v. City of Cedar Rapids*, 308 F.3d 840, 845 (8th Cir.2002)) *see also Chinoy v. Pa State Univ.*, No. 11-1263, 2012 WL 727965, at *5 (M.D. Pa. Mar. 6, 2012) (dismissing the plaintiff's due process claim because alleged statements regarding professional competence are insufficient to satisfy stigma part of the analysis); *Kohn v. Sch. Dist. of Harrisburg*, 871 F. Supp. 2d 487, 498 (M.D. Pa. 2011) (dismissing due process claim because statements concerning competency and job performance are insufficient to satisfy the stigma part of the stigma plus test); *Poteat v. Harrisburg Sch. Dist.*, 33 F. Supp. 2d 384, 393 (M.D. Pa. 1999) ("charges of incompetence do not implicate the liberty interest a public employee has in the manner of discharge").

Here, while Plaintiff has adequately alleged the plus part of the stigma plus analysis, his termination, he has failed to adequately allege the stigma prong of the test.  In particular, Young has alleged that his public firing "created and disseminated a false and defamatory impression that Plaintiff's performance as an employee was poor or subpar." (*Am. Compl.*, ¶ 36.)  However, statements concerning competency or job performance are insufficient to satisfy the stigma requirement to state a due process deprivation of liberty interest claim. Count III of Young's Amended Complaint will therefore be dismissed.

### 3.    Punitive Damages

Defendants also seek dismissal of Plaintiff's request for punitive damages as against Butler Township and Defendants Kisenwether and Altmiller.  Plaintiff asserts that he does not seek punitive damages from Butler Township.  Furthermore, Plaintiff concedes that punitive damages may only be recovered from Defendants Kisenwether and Altmiller in their individual capacities and not their official capacities. *See, e.g., Turner v. City of Phila.*, 22 F. Supp. 2d 434, 440 (E.D. Pa. 1998) ("punitive damages are not available against a

municipality or individuals in their official capacity for violations of § 1983"). Accordingly, the motion to dismiss Plaintiff's request for punitive damages against Defendants in their official capacities will be granted.

**C.     Leave to Amend**

The Third Circuit has instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 237 (3d Cir. 2008); *Grayson v. Mayview State Hosp*., 293 F.3d 103, 108 (3d Cir.2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000)). In this case, because on this set of facts Plaintiff would not be able to state a viable due process claim based on a liberty or property interest, amendment would be futile. As such, Plaintiff's due process claims will be dismissed with prejudice.

### III. Conclusion

For the above stated reasons, Defendants' motion to dismiss will be granted in part and denied in part. Defendants' motion to dismiss the due process claims, Counts II and III, and the request for punitive damages against the individual Defendants in their official capacities will be granted. In all other respects, Defendants' motion to dismiss will be denied.

An appropriate order follows.

August 10, 2012                         /s/ A. Richard Caputo
Date                                         A. Richard Caputo
                                              United States District Judge