# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANSOM YOUNG, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:12-379 |
| v. | : | (JUDGE MANNION) |
| BRIAN KISENWETHER, *Individually and as Butler Twp. Supervisor,* CHARLES ALTMILLER, *Individually and as Butler Twp. Supervisor*, and BUTLER TOWNSHIP, | : : : : | |
| Defendants | | |

## MEMORANDUM

Presently before the court is the defendants Motion for Summary Judgment brought pursuant to Fed. R. Civ. P. Rule 56. (Doc. No. 28).

## I.  FACTUAL BACKGROUND

This case arose when the defendants, Butler Township Supervisors Brian Kisenwether and Charles Altmiller, fired the plaintiff, Ransom Young, from his position as Butler Township road foreman on January 3, 2012. (Doc. No. 29[1], Exh. L, p. 12).

The plaintiff and the defendants have been involved in Butler Township

---

[1]Except where otherwise noted, all exhibits referenced in this memorandum are attached to the defendants' statement of facts. (Doc. No. 29). The plaintiff's statement of facts and memorandum of law rely upon the defendants' attachments as well. (Doc. No. 34).

politics over the past thirty years. The plaintiff served two consecutive terms as township supervisor from January 1983 until December 1992, (Exh. D, p. 19-20), and won a third term by defeating Defendant Kisenwether in 1995. (Exh. K, p. 9). He was reelected to serve a fourth term from January 2007, until December 2013. (Id., p. 101-02).

The plaintiff also held the job of road foreman starting in January 1983, the same time he was elected town supervisor. (Exh. D, p. 21) (Id., p. 21-23). He was terminated from the position in January 1992, when another supervisor wanted the job. (Id., p. 23). He subsequently reapplied for the job in November 1995, (Exh. E), and was reappointed as road foreman in January 1996. (Exh. D, p. 30-31). He held the job continually until his January 3, 2012, termination. (Exh. D, p. 29-31). He also held the separate "road master" position from January 1996 until December 2010, when he resigned from that office. (Id., p. 44, 47).

After his election win over Defendant Kisenwether in 1995, the plaintiff openly supported other candidates who ran against the defendants. Defendant Kisenwether ran against an opponent supported by the plaintiff in the 2009 election. (Exh. K, p. 10). The plaintiff placed a sign supporting the other candidate, in his yard during the election. (Id., p. 11). Despite the plaintiff's opposition, Defendant Kisenwether won the election and became a Butler Township Supervisor. His term expires in December 2015. (Id., p. 10).

In 2011, Defendant Altmiller ran for Butler Township Supervisor against the same opposing candidate who was again supported by the plainitff. (Exh. J, 10-11). Defendant Altmiller was aware that the plaintiff did not support him and favored his opponent. (Id., p. 21). Defendant Altmiller won the election and took office in January 2012. (Id., p. 11). With Defendants Kisenwether and Altmiller forming a new majority, the plaintiff was now a minority supervisor. (Id., p. 12).

The township is required, pursuant to Pennsylvania law, to hold an organizational meeting on the first Monday in January of each year. 53 Pa. Con. Stat. Ann. §67602(a). (Exh. L). During this initial meeting, the supervisors are generally charged with appointing people, including sitting supervisors, to various town positions and offices. (Id.). The defendants held such a meeting on January 3, 2012, where the plaintiff was terminated from his position as road foreman. (Id.). Another individual, the candidate who ran against both defendants in their respective elections, was eliminated from his position as zoning officer. (Id.).

Both Defendant Kisenwether and Altmiller believed that terminating the plaintiff would save the township money, but at the time they did not know how much. (Exh. K, p. 17, 22; Exh. J, p. 78). A later analysis of township financial records revealed that the plaintiff's termination saved approximately $36,658.00 in wages. (Exh. W). Defendant Altmiller, in his role as police chief,

3

also observed the plaintiff absent for large portions of the day after assigning a road crew work. (Exh. J, p. 24). In fact, an equipment operator for the township received complaints regarding the plaintiff's absence from work sites. (Exh. M, p. 48). However, he did not forward these complaints to the township. Defendant Kisenwether witnessed the plaintiff leave job sites to purchase equipment, a job normally done by lesser paid employees. He was also aware that plaintiff performed personal, non-township work on one occasion in exchange for beer and soda. (Exh. K, 67, 87, 108).

## II. PROCEDURAL HISTORY

This case was commenced on February 28, 2012 when the plaintiff filed his complaint alleging three causes of action against the defendants. (Doc. No. 1). Following a motion to dismiss, (Doc. No. 7), one §1983 count for violation of his First and Fourteenth Amendment rights remains. (Doc. No. 16). The defendants filed a motion for summary judgment together with a statement of facts on August 23, 2013. (Doc. No. 28). They subsequently filed their brief in support of that motion on September 6, 2013. (Doc. No. 32). The plaintiff filed his response to the defendants' statement of facts, (Doc. No. 33), and his brief in opposition with a counter statement of facts on September 23, 2013. (Doc. No. 34). The defendants filed their reply brief on October 7, 2013. (Doc. No. 35). The case is now ripe for decision.

### III. STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." [Fed. R. Civ. P. 56(c)](); *see also* [Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)](); [Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990)](). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. [Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)](); [Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995)](). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." [Anderson, 477 U.S. at 249](); *see also* [Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)]() (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. [Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007)]().

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a

genuine issue of material fact. *Celotex, 477 U.S. at 323-24*. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party*." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003)*; *see also Celotex, 477 U.S. at 325*. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998)* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986))*. However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp., 477 U.S. at 322-23*; *Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007)*.

**IV.    DISCUSSION**

Initially, the plaintiff points to the many facts that are in dispute in this case as an indication of why summary judgment is not appropriate. (Doc. No. 33). However, the court, in dealing with the defendant's motion for summary

judgment, must determine whether the "nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which he or she has the burden of proof." *Penny v. Borough of Wildwood Crest*, 28 F.Appx. 137, 138 (3d Cir. 2002)(citing *Celotex*, 477 U.S. at 323). When the nonmoving party fails to present proof concerning an essential element of a claim, all other facts, even if contested, become immaterial and irrelevant. *Id.*

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "To establish a claim for First Amendment retaliation, a plaintiff must demonstrate that he: '(1) engaged in constitutionally protected speech; (2) was subjected to adverse action or deprived of some benefit; and (3) his protected speech was a `substantial' or `motivating factor' in the adverse action.'" *Infantino v. West Wyoming Borough*, 2013 WL 3972770, *3 (M.D.Pa. July 31, 2013)(quoting *Billman v. Corbett*, 2011 WL 605814 (E.D.Pa. Feb. 15, 2011)*. As both the First Amendment and political patronage analyses have the same third prong, the court can deal with both through that element. *Goodman v. Pennsylvania Turnpike Comm'n*, 293 F.3d 655, 663-64 (3d Cir. 2002).

For the purposes of the instant motion, the parties appear to agree that the first two elements, the protected speech and adverse action requirements, are sufficiently established by the record before the court. The plaintiff openly

7

supported candidates who opposed Defendants Kisenwether and Altmiller and was fired from his township job as road foreman. That leaves only the third element, whether the speech was a substantial or motivating factor in his termination. This final element requires a plaintiff to provide sufficient proof that the defendants (1) knew of his protected activity and, (2) that this knowledge was causally related to his termination. *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 275 (3d Cir. 2007).

The plaintiff argues that the defendants' admissions that they knew he did not support them in the 2009 and 2011 elections, combined with the temporal proximity of his termination, are sufficient to meet his burden at this juncture. (Doc. No. 34). He also points to the termination of a zoning officer, who ran against the both defendants, in their respective elections, as evidence of motive. (Id.). The defendants contend that the nature of the organizational meeting requires the supervisors to make appointments and terminations, and, as such, is not sufficient to establish temporal causation. (Doc. No. 35). They also assert that there were legitimate reasons to terminate the plaintiff. (Id.). Moreover, they argue the termination of the township's zoning officer is irrelevant to this case as the plaintiff has not presented any evidence to show that his termination was politically motivated. (Id.).

Turning first to the knowledge requirement, the defendants point the

court to *Everett v. Gould*, 94 F. App'x 954 (3d Cir. 2004), arguing the evidence of motive or causation is insufficient as a matter of law. In *Everett*, the plaintiff, "a. . . Republican, had supported Democrats who ran against [the defendant] in the 1989 and 1995 elections and that [the plaintiff] lost to [the defendant] in the 1999 Republican primary." *Id.* at 956. After the plaintiff lost, he was terminated from his position as road master at the body's first organizational meeting. *Id.* The court determined the plaintiff failed to put forth sufficient evidence of the defendant's motive beyond "mere speculative assertions [regarding the defendant's knowledge] to support his allegations." *Id.* Here, the plaintiff correctly notes that both defendants knew he supported their opposition. However, *Everett* held that mere knowledge is not enough. There must be something else to causally link that knowledge with the plaintiff's termination.

To show causation, the plaintiff must demonstrate either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Gawlas v. King*, 511 F. App'x 160, 163 (3d Cir. 2013) (quoting *Lauren W. ex. rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). When the plaintiff cannot present sufficient evidence to meet either of those requirements, the plaintiff can alternatively show that the record, as a whole, supports an inference of causation. *Id.* Here, the plaintiff

9

does not argue that there was any pattern of antagonism or that the record requires the court to infer causation. (Doc. No. 34).

The plaintiff relies on the temporal proximity and the termination of the zoning officer as corroborating evidence of motive. (Id.). The parties do not contest that the initial meeting, required by statute, is when the township supervisors organize the government and appoint various offices. (Doc. No. 33, ¶17). The plaintiff alleges that "the retaliatory conduct took place at the first opportunity they had to do so - within minutes of assuming control of power in Butler Township," (Doc. No. 34), thus showing an extremely close nexus.

The Third Circuit has noted that courts should rigorously enforce the causation requirements in cases involving public offices, stating:

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. . . . Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

*DeFlaminis*, 480 F.3d at 267-68. The decision at issue here was made in a

10

charged political atmosphere, where a new majority had just taken over the Butler Township Board of Supervisors.

"It is important to emphasize that it is *causation, not temporal proximity itself*, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. The element of causation . . . is highly context-specific." *[Kachmar v. SunGard Data Systems, Inc.](#)*, 109 F.3d 173, 178 (3d Cir. 1997)(emphasis added). The passage of time "between a protected activity and an alleged retaliatory action weighs against a finding of a causal link where there is no evidence of retaliatory animus during the intervening period." *[Shaner v. Synthes](#)*, 204 F.3d 494, 505 (3d Cir. 2000). "[I]n a reform context, it is to be expected that employees will be fired, demoted, or transferred soon after the change in administration, with the result that there is temporal proximity between the change in 'regime' and the adverse employment action." *[Wrobel v. County of Erie](#)*, 692 F.3d 22, 29 (2d Cir. 2012).

The Third Circuit has not determined whether temporal proximity is an appropriate measure of causation when the dates of election and organization are outside of the defendants' control. Other circuits have determined that when an election gives a new party control, the temporal nexus should not be a determinative consideration. "Mere temporal proximity between a change of administration and a public employee's dismissal is insufficient to establish

11

discriminatory animus." *Acevedo-Diaz v. Aponte*, 1 F.3d 62, 69 (1st Cir. 1993). Our court has found insufficient causation when a mere change in regime is coupled with the termination of some employees who support or belong to opposing parties. *Rosenbaum v. Larson*, 552 F.Supp. 608, 612-13 (M.D.Pa. Nov. 2, 1982).

The Third Circuit's discussion in DeFlaminis and Kachmar require the court to look at the context of the termination, while diligently enforcing a causation requirement. Temporal proximity is not tantamount to causation and does not substitute for it. Here, the plaintiff was discharged during an organizational meeting where the board of supervisors appoints people to a variety of jobs, (Exh. L), as required by statute. 53 Pa. Con. Stat. Ann. §67602(a). As the plaintiff participated in those meetings in the past, he was aware and admitted that many positions, including his own road foreman position, are vacated and filled during this initial organizational meeting. (Exh. D, p. 20, 23).

The plaintiff's protected activity occurred before the November 2009 and 2011 elections, respectively, yet he was discharged in January 2012. Although the seating of the new majority created the defendants' "first opportunity," the plaintiff has presented no evidence to indicate how his political opposition factored into his discharge. The plaintiff's position assumes that Defendant Kisenwether waited over two years to settle a

political score that arose from him putting a sign in his front yard. (Doc. No. 34). This lapse in time, without more, is too attenuated to demonstrate causation. *See Shaner,* 204 F.3d at 505 (significant lapse in time without any evidence of animus in the intervening period demonstrates a lack of causation). In Defendant Altmiller's case, the roughly two month break is much closer, but the plaintiff fails to demonstrate how his firing was not part of the general business handled at these annual initial organizational meetings. Given the required business of the meeting includes terminating people from various jobs, the temporal proximity carries significantly less weight and does not tip the scale in favor of the plaintiff. *See Rosenbaum, 552 F.Supp. 608 at 612-13* (change in political control coupled with termination of people belonging to the opposing party insufficient to establish political retaliation claim).

The defendants assert several reasons supported terminating the plaintiff, including his job performance and budget savings. The budget savings have been confirmed to be over $35,000 according to a subsequent financial analysis that the plaintiff has not contested. "It is by now axiomatic that a plaintiff in an employment retaliation case may avoid summary judgment by offering evidence that discredits the reasons articulated by the defense for the adverse employment action." *Montone v. City of Jersey City,* 709 F.3d 181, 191 (3d Cir. 2013). The plaintiff alleges that it is insufficient for

13

the defendants to claim a "general belief" that the plaintiff's termination would save money. (Doc. No. 34). However, the plaintiff has not produced any evidence to contradict that savings, in fact, would and did occur, either at the time the decision was made or through the subsequent financial analysis. Moreover, the plaintiff has failed to proffer evidence contradicting Defendant Altmiller's observations, corroborated by the equipment operator who worked with the plaintiff, or Defendant Kisenwether's knowledge of his poor job performance. Based upon the foregoing, the court has determined that the plaintiff has failed to make out a *prima facia* case of political retaliation. Even had the plaintiff succeeded, it appears the defendants have produced sufficient evidence that "the same employment action would have been taken even in the absence of the protected activity." *Galli*, 490 F.3d at 271.

The plaintiff's raising of "coaching" as an issues that arose during Defendant Altmiller's deposition is unavailing as well. (Doc. No. 34). A motion for summary judgment is not the appropriate vehicle to deal with discovery disputes. *Yeisley v. Pennsylvania State Police,* 2010 WL 4791660, *14 (M.D.Pa. Nov. 18, 2010).

Finally, the plaintiff points to the dismissal of the zoning officer, a candidate that opposed both defendants in 2009 and 2011, as evidence of other politically motivated firings. The plaintiff points the court to *Galli*, where the Third Circuit held that evidence of "other politically motivated

terminations," combined with statements by the defendant's staff, was sufficient to show the defendant's knowledge of political motivations. 490 F.3d at 275. While this is true, the central issue here is causation, not knowledge. *Galli,* is simply inapplicable to the case at hand. Further, the plaintiff does not have standing to assert a claim on behalf of the former zoning officer, nor does the fact that he filed a lawsuit against the same defendants demonstrate discrimination. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1247 (3d Cir. 1993). This evidence does not create a genuine issue of material fact regarding causation.

When a new political regime takes office, they are expected to institute change. Part of that change is accomplished through discharge of some government employees and the hiring of new ones. These decisions are made in a "charged political context," and it is not the courts job "to second guess the actors' decisions" without sufficient evidence to show political animus. *DeFlaminis,* 480 F.3d at 267-68. "The plaintiff has been able to point to no evidence to substantiate his claim of political firing other than the mere circumstance that he, a long time Democrat was fired by a Republican administration and that the other Democrats were similarly discharged." *Rosenbaum,* 552 F.Supp. at 612. Without any further evidence of a political animus or motivation, the plaintiff cannot demonstrate an issue of material fact as to causation. Given it is an essential element to his claim, judgment

must be entered in favor of the defendants.

"[B]ecause there was no genuine issue of material fact with respect to the liability of defendants" Kisenwether and Altmiller, "there was no basis for imposing liability upon the Township. In order for there to be municipal liability under 42 U.S.C. §1983, the plaintiff must plead and prove a violation of his Constitutional rights." *Everett*, 94 F. App'x at 956. As such, summary judgment is appropriate for Defendant Butler Township as well.

## V. CONCLUSION

For the foregoing reasons, the defendants motion for summary judgement is **GRANTED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED:** November 8, 2013

O:\Mannion\shared\MEMORANDA - DJ\2012 MEMORANDA\12-379-01.wpd